OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 A basic premise of our criminal justice system is that a defendant has the right to trial by an impartial jury. This appeal requires us to consider, once again, what it means for a juror to be impartial, and what is required to insure the impartiality of the jury.
 

 Defendant was convicted of assault for stabbing his former girlfriend. His defense at trial was that he had acted in self-defense after she had attacked him with a razor blade. During voir dire, defense counsel asked a panel of prospective jurors if anyone was “thinking in the back of your mind maybe this is not the case that I ought to be sitting on because of my own personal background, my own personal experience, my own personal feelings about certain situations.” Prospective Juror Number 4, who had a bachelor’s degree in sociology and had minored in women’s studies, answered, ‘Wes,” stating that she had done “a lot of research” on domestic violence and battered women’s syndrome. She added, “I have a problem with that.” Defense counsel then asked whether if, in the jury room, “would you be saying, well, I minored in this in college, and I’ve done all of this research and in effect become another witness in the case, an expert if you will, on that area with the
 
 *361
 
 other jurors. Do you think that might be a problem?” The prospective juror answered, “I think so.” Counsel then asked whether she would feel more comfortable sitting on another kind of case, such as a bank robbery. She responded, “I think I would.”
 

 Later in the voir dire, defense counsel asked the entire panel whether they could follow the law as instructed by the court, and whether they agreed that they would not use this case as a “referendum” on crime, domestic abuse or violence in the streets. Without stating how, the transcript reads, “Prospective jurors indicating yes.”
 

 Defense counsel moved to excuse Prospective Juror Number 4 for cause, arguing she had indicated that she could not be fair in this case because of her background in women’s studies. Counsel noted she did not give an unequivocal assurance that she could be fair, and added the juror had admitted the possibility that, because of her background, she might become an “unsworn witness in the jury room.” The prosecutor opposed the challenge, arguing that although the prospective juror said that she would “feel more comfortable with another kind of case,” and that she had “experience with issues concerning conjugal violence and women’s studies,” she did not say that she “wouldn’t be able to listen to the law and would be unfair.” The prosecutor contended that the juror “can be advised as to what she can or cannot do.”
 

 The trial court denied the challenge for cause, after which defense counsel used a peremptory challenge to excuse Prospective Juror Number 4. During the course of the voir dire, defendant exhausted his peremptory challenges.
 

 A divided Appellate Division reversed. The majority reasoned that once “the prospective juror expressed doubt regarding her ability to be impartial or indicated that she might be an unsworn expert witness in the jury room, it was incumbent upon the court to ascertain that her prior state of mind would not influence her verdict and that she would render an impartial verdict based on the evidence.” (272 AD2d 857, 858.) In addition, the majority noted that “the later general acknowledgment by all prospective jurors that they would follow the law” did not establish “the impartiality of the prospective juror in question.” Two Justices dissented, arguing that the prospective juror indicated no “predisposition to rule a certain way,” and also “indicated that she would base her decision on the evidence alone and that she would follow the law as instructed by
 
 *362
 
 the court.” (272 AD2d, at 858-859.) A Judge of this Court granted leave, and we affirm.
 

 Analysis
 

 One of the important rights afforded a criminal defendant under our system of justice is the right to a fair trial before an unbiased fact finder. But ours is a human process, and just as there are no “perfect” trials, there are no “perfect” juries.
 

 While the goal is utter impartiality, each juror inevitably brings to the jury room a lifetime of experience that will necessarily inform her assessment of the witnesses and the evidence. This is a reality we simply cannot deny. Nor would we want a jury devoid of life experience, even if that were possible, because it is precisely such experience that enables a jury to evaluate the credibility of witnesses and the strength of arguments. What we can — and do — ask, however, is that every juror enter the trial with an open mind, that every juror not be prejudiced from the outset against any particular party, and that every juror be willing to decide the case solely on the evidence presented and the law instructed by the Trial Judge.
 

 In order to achieve that goal, Criminal Procedure Law § 270.20 (1) (b) provides that a party may challenge a prospective juror for cause if the juror “has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at trial.” Upon such a challenge, a juror who has revealed doubt, because of prior knowledge or opinion, about her ability to serve impartially must be excused unless the juror states unequivocally on the record that she can be fair. While the CPL, unlike the former Code of Criminal Procedure, does not require any particular expurgatory oath or “talismanic” words
 
 (see, People v Johnson,
 
 94 NY2d 600, 611;
 
 People v Culhane,
 
 33 NY2d 90, 106), jurors must clearly express that any prior experiences or opinions that reveal the potential for bias will not prevent them from reaching an impartial verdict. If there is any doubt about a prospective juror’s impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have “replaced one impartial juror with another”
 
 (People v Culhane, supra,
 
 at 108 n 3).
 

 Applying that principle, this Court held in
 
 People v Johnson
 
 that the defendant’s challenge for cause was improperly denied where a prospective juror stated that he would tend to favor police testimony and that he did not know whether he could evaluate police testimony fairly (94 NY2d, at 604-606).
 
 *363
 
 Similarly, in
 
 People v Reyes,
 
 a companion case to
 
 Johnson,
 
 we held that a prospective juror should have been excused who said that, as a parent, she would have difficultly being impartial in a drug case, that she could “only try” to be fair, and that there were “a lot of emotional things” that would color her view of the case
 
 (see, id.,
 
 at 607-608). When “potential jurors themselves openly state that they doubt their own ability to be impartial in the case at hand, there is far more than a
 
 likelihood
 
 of bias, and an unequivocal assurance of impartiality must be elicited if they are to serve”
 
 (id.,
 
 at 614 [emphasis in original]).
 

 Prospective jurors who make statements that cast serious doubt on their ability to render an impartial verdict, and who have given less-than-unequivocal assurances of impartiality, must be excused
 
 (see, People v Blyden,
 
 55 NY2d 73, 78;
 
 see also, People v Torpey,
 
 63 NY2d 361, 367-369). By contrast, where prospective jurors unambiguously state that, despite preexisting opinions that might indicate bias, they will decide the case impartially and based on the evidence, the trial court has discretion to deny the challenge for cause if it determines that the juror’s promise to be impartial is credible
 
 (see, People v Williams,
 
 63 NY2d 882, 884-885).
 

 Here, as the Appellate Division correctly held, the trial court should not have seated Prospective Juror Number 4 without obtaining her unequivocal assurance that she could be fair. In response to defense counsel’s questioning, the prospective juror volunteered that she did not think she should be sitting on this case because of her experience. Specifically, she stated that she had studied domestic violence extensively and that she had a “problem.” Those statements revealed that, because of her background, the juror herself questioned whether she could be impartial in any domestic violence case. Thus, the juror’s own statements cast serious doubt on her ability to serve. Accordingly, the trial court should have granted the challenge for cause unless the juror unequivocally indicated that she could be fair despite her background.
 

 Furthermore, we agree with the Appellate Division that the collective acknowledgment by the entire jury panel that they would follow the Judge’s instructions and would not use this case as a “referendum” on crime or domestic violence was insufficient to constitute an unequivocal declaration of impartiality from Prospective Juror Number 4. The group answer by the entire panel did not address her personal attitudes, nor did it force her to confront the crucial question whether she could
 
 *364
 
 be fair to this defendant in light of her expressed predisposition. Indeed, nothing less than a personal, unequivocal assurance of impartiality can cure a juror’s prior indication that she is predisposed against a particular defendant or particular type of case.
 

 Defendant also contends that further inquiry was required of Prospective Juror Number 4 after she admitted that, because of her knowledge on domestic violence issues, she might, in the jury room, become an unsworn “expert” witness on the subject. This too is a recurring issue and a matter of serious concern. Indeed, even more so than defining “bias,” courts have struggled to draw the line between permissible “life” experience and impermissible juror “expertise.” Commentators also have grappled with this issue
 
 (see,
 
 Richard M. Fraher,
 
 Adjudicative Facts, Non-Evidence Facts, and Permissible Jury Background Information,
 
 62 Ind LJ 333 [1987]; John H. Mansfield,
 
 Jury Notice,
 
 74 Geo LJ 395 [1985]).
 

 The governing principle is easily stated: the jury must reach its verdict solely “on evidence received in open court, not from outside sources”
 
 (Sheppard v Maxwell,
 
 384 US 333, 351;
 
 see also, People v De Jesus,
 
 42 NY2d 519, 523;
 
 People v Hommel,
 
 41 NY2d 427, 429). As the pattern instruction on the function of the jury states, the jury must resolve “each and every issue of fact * * * solely on the evidence in the case and that evidence alone,” and “may not consider or speculate on matters not in evidence or matters outside the case” (1 CJI 5.10).
 

 Accordingly, courts have at times found it necessary to reverse convictions where jurors have been exposed to prejudicial, extra-record facts. Reversals, for instance, have resulted where the trial court permitted the prosecutor to act as an unsworn witness by arguing non-record facts in summation
 
 (see, e.g., People v Jackson,
 
 7 NY2d 142, 144-145), and where the jury had been exposed to prejudicial media publicity during the trial
 
 (see, e.g., Marshall v United States,
 
 360 US 310, 311-313). Trial courts must take proper measures to insure that the jury bases its verdict on the evidence.
 

 As a corollary to that principle, this Court has reversed convictions where the jury has reached its verdict by going outside the evidence and conducting unauthorized investigation or experimentation. On several occasions, we have overturned convictions where jurors have engaged in unauthorized experiments or re-creations of the crimes, injecting non-record evidence into the deliberative process. Specifically, in
 
 *365
 

 People v Stanley
 
 (87 NY2d 1000), during a court-arranged visit to the crime scene, two jurors conducted an experiment designed to test whether the eyewitness could have seen the events as described in her testimony. In
 
 People v Legister
 
 (75 NY2d 832), a juror conducted an experiment in her hotel room — with another juror present — designed to simulate the lighting conditions at the time of the crime, and they shared their results with the other jurors the next morning. And in
 
 People v Brown
 
 (48 NY2d 388), a juror conducted a test with her van to determine if a police officer could have — as he testified — identified defendant during the incident from his seat in a police van, again sharing the results of her “test” with the other jurors. In all of these cases, we determined that the experiments conducted by the jurors denied the defendants a fair trial because the jurors injected non-record evidence on matters beyond the common understanding of the jury into their deliberations.
 

 Most recently, in
 
 People v Maragh
 
 (94 NY2d 569), we reversed a conviction and ordered a new trial where two jurors— both nurses — used their professional expertise to calculate the victim’s blood loss and reach conclusions about the cause of death, reaching findings that contravened the expert testimony and theories both sides presented at trial. The nurses then shared their findings with the rest of the jury, which used them in its deliberations. While noting that a verdict generally “may not be impeached by probes into the jury’s deliberative process,” we recognized that a narrow exception exists where there has been a showing of “improper influence” on the jury
 
 {id.,
 
 at 573). Specifically, the Court held that a grave potential for prejudice is present where
 

 “a professional in everyday life shares expertise to evaluate and draw an expert conclusion about a material issue in the case that is distinct from and additional to the * * * proofs adduced at trial. Other jurors are likely to defer to the gratuitous injection of expertise and evaluations by fellow professional jurors, over and above their own everyday experiences, judgment and the adduced proofs at trial. Overall, a reversible error can materialize from (1) jurors conducting personal specialized assessments not within the common ken of juror experience and knowledge (2) concerning a material issue in the case, and (3) communicating
 
 *366
 
 that expert opinion to the rest of the jury panel with the force of private, untested truth as though it were evidence”
 
 (id.,
 
 at 574).
 

 Here, relying on
 
 Maragh,
 
 defendant argues that the trial court was required to conduct further inquiry of Prospective Juror Number 4 after she indicated that, because of her background in women’s studies, she might become an unsworn expert witness on the issue of domestic violence.
 

 We readily agree that when the juror concurred with defense counsel’s suggestion that she might, in the jury room, become another expert witness in the case, the trial court — to avoid Maragh-type problems — should immediately have reminded, and cautioned, her that she was required to decide the case solely on the evidence presented. Trial Judges are strongly encouraged to follow that practice
 
 whenever
 
 a prospective juror indicates a possible motivation to inject non-record facts into the deliberations. The more difficult question is whether at that point the Trial Judge’s refusal to allow a challenge for cause based on that ground alone would constitute reversible error. Under the facts before us, we cannot say that it would.
 

 None of the requirements identified in
 
 Maragh
 
 as necessary to create reversible error were met here. The juror obviously did not conduct any “personal specialized assessments” of the evidence outside the common ken of juror experience
 
 (see,
 
 94 NY2d, at 574) — she was excused on a peremptory challenge by the defense. Even more fundamentally, the record does not demonstrate that Prospective Juror Number 4 could have injected any knowledge outside the common realm of juror experience into the deliberations, or that she stood in a position of expertise comparable to the jurors in
 
 Maragh.
 
 The fact that the juror had studied domestic violence in college did not demonstrate that she had specialized knowledge that would enable her to exert undue influence on her fellow jurors. Indeed, all jurors bring their background, education and “predispositions, of varying intensity, when they enter the jury box”
 
 (People v Williams, supra,
 
 63 NY2d, at 885). We do not require jurors to check their life experiences at the courtroom door, nor could we.
 
 *
 
 In fact, one of the goals of New York’s jury reform was to eliminate all automatic exemptions from service, bringing to
 
 *367
 
 the jury room a wide array of individuals with specialized knowledge and training.
 
 Maragh
 
 should not be read as requiring trial courts automatically to excuse them.
 

 What
 
 Maragh
 
 and our other precedents do require, however, is that jurors not engage in experimentation, investigation and calculation that necessarily rely on facts outside the record and beyond the understanding of the average juror. This applies equally if the jury conducts unauthorized experiments at the crime scene, or if an “expert” juror performs “expert” scientific analysis — requiring knowledge of facts beyond those presented at trial — and convinces the other jurors to disregard the trial testimony and instead rely on his expertise. Of course no such thing happened here.
 

 In. addition, under
 
 Maragh,
 
 there is no reversible error unless a juror has specialized knowledge “concerning a material issue in the case” (94 NY2d, at 574). Here, while defendant was charged with assaulting his former girlfriend, he points to no material contested issue in the case particular to Prospective Juror Number 4’s research. Finally,
 
 Maragh
 
 states that reversible error will occur only where the juror communicates an “expert opinion to the rest of the jury panel with the force of private, untested truth as though it were evidence” (94 NY2d, at 574). Again, since Prospective Juror Number 4 was not seated, she did not communicate any specialized knowledge to the other jurors. On this record, we decline to hold that the trial court’s failure to take action, at the voir dire stage, to prevent potential jury misconduct constituted immediate reversible error.
 

 While a finding of reversible error on that ground would be premature here, we caution trial courts to investigate and address potential jury misconduct problems as early as possible. Jurors should be instructed from the outset that they must decide the case based on the evidence presented and that evidence alone. Further, if any juror indicates a willingness to consider facts outside the record, the court should remind the juror what is and is not permissible. Indeed, in
 
 Maragh,
 
 we suggested that trial courts may wish to “modify their standard instructions differentiating between ordinary and professional opinions of jurors, and directing that jurors may not use their
 
 *368
 
 professional expertise to insert facts and evidence outside the record with respect to material issues into the deliberation process” (94 NY2d, at 576). We urge trial courts to give such a charge, in order to alleviate the potential for improper activity. In fact, a pattern charge has been devised for use in civil cases
 
 (see,
 
 PJI 1:25A). And, of course, if a juror upon inquiry in voir dire indicates an inability or unwillingness to follow the Judge’s instructions, that would provide grounds for a challenge for cause.
 

 In sum, we conclude that the Appellate Division correctly reversed defendant’s conviction. After Prospective Juror Number 4 volunteered that she had a predisposition that might prevent her from being impartial in a domestic violence case, the trial court should have granted the challenge for cause unless the juror stated unequivocally that she would be able to render an unbiased decision.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed.
 

 *
 

 Significantly, courts from other jurisdictions have held that reversible error is not created whenever jurors share their life experiences, including experience with particular subjects, during deliberations (see,
 
 e.g., State v
 
 
 *367
 

 Miller,
 
 167 Ore App 72, 76-78, 1 P3d 1047, 1050;
 
 State v Coburn,
 
 724 A2d 1239, 1241 n 2 [Me];
 
 Saenz v State,
 
 976 SW2d 314, 320-323 [Tex];
 
 State v Dickens,
 
 187 Ariz 1, 16, 926 P2d 468, 483,
 
 cert denied,
 
 522 US 920;
 
 State v Graham,
 
 422 So 2d 123, 132 [La],
 
 appeal dismissed
 
 461 US 950;
 
 Jordon v State,
 
 481 P2d 383, 388 [Alaska]).