OPINION OF THE COURT
Dora L. Irizarry, J.
This case raises the unique issue of what procedural safeguards must be followed to determine questions of potential juror bias and/or impartiality based upon concerns brought to the court’s attention by sitting jurors during various stages of a criminal trial.
The defendant herein is charged with two counts of assault in the first degree (under Penal Law § 120.10 [1], [2]) and one count of criminal possession of a weapon in the third degree (under Penal Law § 265.01 [2]; § 265.02 [1]).
In connection with the first assault count, the indictment charges, in essence, that the defendant intended to, and did, cause serious physical injury to another person “by means of a dangerous instrument.” Additionally, the weapon possession count alleges that the defendant possessed “a dangerous instrument” (the same dangerous instrument alleged under the first assault count) with the intent to use it unlawfully against another.
Following a thorough jury voir dire conducted by the court and the parties, which included questioning regarding personal and professional experience, 12 jurors and 3 alternate jurors were deemed acceptable by the parties and were duly sworn.
This court then gave required preliminary instructions to the jury, explaining in general terms the basic functions and duties of the jurors, standard trial procedures and relevant legal principles. As pertinent herein, the jury was instructed that opening statements do not constitute evidence; that “there is no obligation on the defendant to offer evidence since the entire burden of proof remains upon the People”; that the People have the sole burden of proving each and every element of each crime charged beyond a reasonable doubt, failing which the jury must return a not guilty verdict; and that competent evidence consists of testimony of witnesses under oath, exhibits which are introduced into evidence and any stipulations entered into between the parties.
The jury was instructed further that, during the course of the trial, either party “may object to a question or an answer *801 on the ground that somehow it is legally improper or inadmissible” and that the court would make appropriate rulings on such objections. In this connection, the court instructed specifically:
“Please do not resent the fact that either attorney makes objections. This is their duty. Also, do not hold it against either attorney or party if I rule against him. You must not concern yourselves with the court’s reason for rulings on any objections. You must not consider any question or testimony to which an objection was sustained or which has been ordered stricken.
“As I will explain to you in detail in my final charge, as jurors in this case, you are the sole judges of the facts and I am the sole judge of the law. You must accept the law as I give it to you without hesitation or reservation, even if you privately disagree with me. You must keep an open mind. It is my function to make rulings and to charge you on the law. I tell you now that you are not to infer from any of my evidentiary rulings or from anything else that may occur in the courtroom that I have an opinion on this case. I tell you and I instruct you that I do not.”
Regarding credibility and factual determinations, the jury was instructed that they “must keep an open mind and not form or express any opinions or conclusions with respect to the evidence in this case, until I submit the case to you for your deliberation.”*
During defense counsel’s opening statement, the court sustained objections by the prosecutor to references to a 911 tape that (as discussed at sidebar) had not yet been the subject of a ruling regarding admissibility; to an alleged statement of the defendant that had previously been ruled inadmissible; to attempts by defense counsel to give legal instructions to the jury; and to counsel’s comment that the jury should not be “impressed” by the prosecutor’s style of oratory. In some instances, the court gave prompt curative instructions to the jury.
Further, defense counsel introduced the major portion of his arguments with the phrase “I will prove.” Thus, to obviate any confusion on the part of the jurors regarding the burden of *802 proof and any related potential prejudice to the defendant, following defense counsel’s opening statement, the jury was instructed as follows:
“I remind you the burden of proof never, never shifts to the defendant. The burden of proof rests with the People. It never shifts to the defendant. The People have the burden of proving each and every element of the charges submitted to you, the jury, beyond a reasonable doubt.”
At that point, as the court directed a recess in the trial proceedings, juror No. 5, who had advised during the jury voir dire that he is an attorney currently sitting as an Administrative Law Judge, stated that he wished to speak with the court “in private.”
Thereafter, outside the presence of the balance of the jury, but in the presence of the parties, juror No. 5 expressed concern with the court’s rulings and curative instructions in connection with the opening statement of defense counsel. In this regard, juror No. 5 offered his opinion that the court’s instructions were repetitive and stated that he was “getting the impression” that the court had “some sort of animosity” against defense counsel and/or counsel’s manner of argument during the opening statement, which was “contrary to the way I am seeing this matter.”
Clearly, the statements made by juror No. 5 presented issues of potential juror bias and an unwillingness or inability to follow the court’s preliminary instructions regarding basic trial procedure and the respective duties of the jury and the court. Thus, it was necessary to conduct an appropriate inquiry.
Certainly, myriad cases have addressed procedural issues regarding exploration of potential juror bias in the context of the jury selection process (e.g., People v Johnson, 94 NY2d 600; People v Braxton, 277 AD2d 39 [1st Dept], lv denied 95 NY2d 961), in which circumstances the provisions of CPL 270.20 would apply. Most often under this section the court is obligated to conduct appropriate inquiry to determine whether a prospective juror possesses “a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial” (CPL 270.20 [1] [b]). If it is then determined by the court that a prospective juror possesses such a state of mind, the court must grant a challenge for cause and exclude the challenged individual from jury service in the case (CPL 270.20 [2]).
However, when a question arises involving the qualification of a sworn juror to continue service on a particular case after *803 the jury is empaneled, the court must look to the provisions of CPL 270.35. In pertinent part, this section mandates that, if the trial court finds, “from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial, the court must discharge such juror” (CPL 270.35 [1]). In making this determination, the court must conduct “a reasonably thorough inquir/’ into the matter, offer the parties the opportunity to be heard, and place its findings on the record (CPL 270.35 [2] [a], [b]). As noted by the Court of Appeals in People v Rodriguez (71 NY2d 214), generally the trial cotirt, in the best position to assess factors such as demeanor, is accorded latitude in making the determination regarding a sitting juror’s qualification to continue service on a particular case. The Rodriguez case involved a juror who, during deliberations, advised the trial court of a specific bias against the defendant (as opposed to a potential bias) and stated that this bias was, in fact, affecting her ability to render a decision as to the defendant’s guilt or innocence. In such circumstances, the Court held that the trial court should have dismissed that juror from the case as grossly unqualified to serve, under CPL 270.35.
Most recently, the Court of Appeals has addressed the issue of potential juror bias and procedural safeguards in connection therewith in the context of the jury voir dire process in People v Arnold (96 NY2d 358 [2001]). In Arnold, Chief Judge Kaye, writing for the Court, instructs that, although it is impossible, as well as undesirable, to form a jury devoid of the life experience that would assist in a juror’s evaluation of credibility and argument, what must be, and is, asked is “that every juror enter the trial with an open mind, that every juror not be prejudiced from the outset against any particular party, and that every juror be willing to decide the case solely on the evidence presented and the law instructed by the Trial Judge” (id., at 362). To achieve this goal, the Court instructs that the trial court must look to the provisions of CPL 270.20 (1) (b), which provide that a party may challenge a prospective juror for cause on the ground that the individual in question has a state of mind that is likely to preclude him or her from rendering a fair and impartial verdict based solely on the evidence presented at trial, and thus that a prospective juror “who has revealed doubt, because of prior knowledge or opinion, about her ability to serve impartially must be excused unless the juror states unequivocally on the record that she can be fair” *804 (id.). It is this court’s view that no less a standard regarding assurance of juror impartiality must apply in the case of a sitting juror who raises a doubt regarding his or her ability to serve impartially. Failing an unequivocal assurance of impartiality, the sitting juror in question must be deemed “grossly unqualified to serve in the case” per CPL 270.35 (1).
Here, there is no question that the statements of juror No. 5 regarding his personal views of basic trial procedure raised issues of potential juror bias and/or his ability to honor his oath as a juror to decide the case solely on the evidence presented and the law instructed by the court.
Thus, the inquiry regarding juror No. 5 began with the court reminding him of the instructions given to the jury immediately preceding opening statements, particularly those portions that explained the court’s duty to render appropriate legal instructions and rulings and each juror’s concomitant duty to accept those instructions and rulings, whether or not the juror agrees with them and without inferring any position or bias by the court with respect to either the prosecution or the defense.
Juror No. 5 responded, in pertinent part, by offering his opinion that the court’s instructions were unduly repetitive, and that, although it might not, in fact, be the case, it was this juror’s perception that the court’s manner of speaking “appears aggravated and contemptuous.” Stating that he would “defer” to the court and counsel for either side regarding evidentiary matters in criminal law, juror No. 5 also noted that, in his “hearing room,” evidentiary rules “basically do not exist.”
Juror No. 5 then stated that, although he believed he could continue as a juror in this case, he felt it was best that he “get these things out.”
During further colloquy, juror No. 5 responded affirmatively to defense counsel’s questions as to whether he would decide the case based upon whether or not the prosecutor had “carried his burden of proof.”
When the prosecutor attempted to ask juror No. 5 how he would view any future objections offered by the prosecution, juror No. 5 interrupted and offered the statement that he knew the rules and that, unless the prosecutor would be objecting “frivolously,” he “had every confidence” that the court would rule “on the basis of the law of evidence.”
When the court attempted to ask juror No. 5 if he would accept that the court had no personal position regarding the case and not make any inference if the court found it necessary to *805 inteiject a ruling during any dynamic exchanges that might occur in the trial, juror No. 5 responded, “If you like, I am ready if you do interrupt either side, more than I was before.” He again referred to Ms knowledge of evidence, as well as Ms duties as an Administrative Law Judge, but stated that he would not put Ms judgment in place of the court’s “in terms of evidentiary rulings.” Juror No. 5 then indicated that he wished to avoid “popping up and down” during the trial with any further concerns he might have and advised the prosecutor that he would “assume” the prosecutor’s objections would be “in good faith.”
Juror No. 5 then voiced Ms opinion that defense counsel’s remarks in opening constituted “advocacy”; assured the parties that he knew what defense counsel “is going to try to prove”; and stated that, although he would “go with the evidence,” he would also understand if the prosecutor had “a problem.”
Following this inquiry, the prosecutor argued that juror No. 5 should be dismissed from the jury on the grounds that Ms comments evidenced partiality toward defense counsel and a tendency to question the court’s legal rulings and substitute them with his own legal conclusions. Defense counsel opposed such dismissal on the grounds that, at one point during the extended inquiry, juror No. 5 stated that he would not put his own judgment in place of the court’s “in terms of evidentiary rulings” and that he would decide the case based on whether or not the prosecutor proved the case against defendant beyond a reasonable doubt.
In addressing the issue of disojualification of a sworn juror, over a defendant’s objection, as “grossly unqualified to serve in the case” under CPL 270.35, the Court of Appeals instructs, in People v Buford (69 NY2d 290, 298), that this standard is satisfied only “when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict” (citation omitted).
It is this court’s determination that juror No. 5’s expressed disagreement with the court’s repeated instructions regarding the burden of proof in a criminal trial, his second-guessing regarding the propriety of the court’s rulings and drawing of impermissible inferences therefrom, and Ms inclination to personally evaluate the legal soundness of objections entered and anticipated to be entered by the prosecutor, all indicate an inability to follow basic legal instructions given by the court and to consider the evidence and arguments fairly and impartially. This renders juror No. 5 grossly unqualified to *806 continue service as a juror in this case under CPL 270.35, because it is obvious that he possesses a state of mind which would prevent the rendering of an impartial verdict (see, People v Arnold, supra; People v Buford, supra).
The issue of potential juror bias arose again during the testimony of the complainant, which included extensive direct and cross-examination focusing on the manner in which the complainant sustained the alleged injuries. Specifically, a material issue was presented as to whether the complainant was hit with a metal tool (the “dangerous instrument” element of the assault and weapon possession charges under counts 1 and 3 of the indictment), as alleged by the complainant, or whether the complainant received a defensive punch, as alleged by the defendant.
At a recess during the cross-examination of the complainant, juror No. 8 approached a court officer to advise that he wished to speak with the court regarding his experience with professional boxing (not mentioned during the jury voir dire), which might affect his ability to objectively or impartially assess the evidence in the case.
The court proposed (and the parties agreed) that the court and the parties would ask juror No. 8 about his specific concern, following which the court would repeat the instructions previously given to the jury regarding competent evidence and instruct specifically, in accordance with People v Maragh (94 NY2d 569), that it is improper for any juror to utilize any professional expertise or specialized knowledge to express any professional opinion or insert facts and evidence with respect to any material issue in the case. Juror No. 8 would then be asked if he could give assurance that he would follow the instructions without any reservation or hesitation.
Thereafter, out of the presence of the balance of the jury, juror No. 8 advised the court and the parties, for the first time, that he was a third-generation boxer, nationally ranked in full contact martial arts, and that during the cross-examination of the complainant, his background in boxing prompted him to consider what type of punch might or might not result in the particular type of injuries alleged by the complainant.
Following the court’s instructions regarding competent evidence and professional or specialized knowledge, juror No. 8 said that he believed it would be “disingenuous” for him to state that his background in boxing would not affect his consideration of the evidence in this case. Juror No. 8 subsequently responded affirmatively to questions posed by the par *807 ties as to whether he could be “fair to both sides” in considering the evidence presented, but added that he would also take into consideration his background, past experience and knowledge and respond accordingly if a fellow juror, during deliberations, asked whether “a hook or a jab” could create a particular result. Juror No. 8 then responded affirmatively to questions of defense counsel as to whether he could put aside, during deliberations, his martial arts experience and base his fact and credibility determinations on the evidence presented. However, he added that if he was asked by his fellow jurors how he came to a particular conclusion, he would have to “support it.” When asked specifically by defense counsel if he would substitute Ms “personal experience for evidence,” juror No. 8 responded, “No, I don’t think I would do that.”
The court then noted that juror No. 8’s facial expression showed worry or concern and he responded that he was “just a little nervous.” When asked by the court to clarify Ms stated position regarding “owing” an explanation to fellow jurors of any position he might take during deliberations in connection with credibility issues, juror No. 8 repeated that he “would at least owe them that.” When asked by the court whether he would allow his reasoning and assessment “to include any of the special background” that he had in boxing or martial arts, juror No. 8 responded that he believed “it would inevitably have some effect,” although he did not know if it would have an effect on “how objective” he would be.
The court then asked if juror No. 8’s concern was that he was not “sure” whether his special background in boxing and martial arts would have an impact and that he could not state “unequivocally whether or not it would have any impact,” and juror No. 8 responded affirmatively.
Defense counsel then elicited juror No. 8’s assurance that, although he could not predict the future, he would advise the court if he again experienced a personal “conflict” regarding the testimony of any witness.
Following this inquiry, defense counsel argued that juror No. 8 should be permitted to remain on the jury unless and until he expressed any further “conflict” with testimony presented since, at one point during the extended inquiry, juror No. 8 stated that he would not “substitute Ms experience for the evidence.” On the other hand, the prosecutor argued that juror No. 8 should be excused from jury service in this case because he did not give unequivocal assurance that he could omit “past experiences” from the deliberative process.
*808 Again, it is this court’s view that no lesser standard for assuring juror impartiality than as set forth in People v Arnold (supra) regarding prospective jurors must be applied in the case of a sitting juror who, during the trial, raises a doubt regarding his or her ability to serve impartially because of prior knowledge or opinion. Thus, it is the trial court’s obligation to conduct an appropriate inquiry to determine whether a sitting juror who has raised such a doubt can state unequivocally that he or she can keep an open mind and decide the case impartially, based solely on the evidence presented and the law instructed by the trial court and without consideration of and/or recourse to any specialized knowledge or professional opinion.
Here, juror No. 8 was unable to state unequivocally that he would be able to set aside his specialized knowledge of boxing and martial arts in determining the material issue presented in this case of the manner in which the complainant sustained the alleged injuries. It is this court’s determination that juror No. 8’s inability to give such unequivocal assurance renders him grossly unqualified to continue service as a juror in this case under CPL 270.35, because it is obvious that he possesses a state of mind which would prevent the rendering of an impartial verdict (see, People v Arnold, supra; People v Buford, supra).

 Similar instructions were given at those points in the trial when recesses in the proceedings were directed by the court.