■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVE JOHNSON, Appellant. [902 NYS2d 57]—

Judgment, Supreme Court, New York County (Maxwell T. Wiley, J.), rendered March 21, 2007, convicting defendant, after a jury trial, of attempted murder in the second degree as a hate crime, two counts of attempted murder in the second degree, assault in the first degree as a hate crime, three counts of assault in the first degree, 15 counts each of kidnapping in the second degree as a hate crime and kidnapping in the second degree, five counts each of assault in the second degree as a hate crime and of assault in the second degree, and three counts each of criminal possession of a weapon in the second and third degrees, and sentencing him, as second violent felony offender, to an aggregate term of 240 years, affirmed.

In its main charge on the insanity defense, and in its response to notes from the deliberating jury, the court properly read the Criminal Jury Instructions pattern charge on that subject (CJI2d[NY] Insanity), and in each instance, properly declined to add language instructing the jury to consider defendant's capacity to know or appreciate the wrongfulness of his conduct from a subjective point of view relating to the false beliefs he allegedly held as a result of psychiatric illness. The standard language permitted the jury to accept defendant's insanity defense under the theory that his asserted thought disorder caused him to sincerely believe society would approve of his otherwise immoral acts because they were divinely commanded. The court was not obligated to add specific language to that ef-

fect, or to give any special instructions concerning a false belief that one's actions were in obedience to divine instructions (*see People v Wood*, 12 NY2d 69, 76 [1962]; *cf. People v Adams*, 26 NY2d 129, 135-136 [1970], *cert denied* 399 US 931 [1970]). We also conclude that the supplemental instructions were meaningful responses to the jury's notes (*see People v Almodovar*, 62 NY2d 126, 131-132 [1984]; *People v Malloy*, 55 NY2d 296, 301-302 [1982], *cert denied* 459 US 847 [1982]). In any event, we note there was ample evidence from which the jury could conclude that defendant did not, in fact, have any delusions or hallucinations about being divinely commanded to commit his criminal acts.

The court properly denied defendant's challenge for cause to a prospective juror, who, notwithstanding her self-professed "strong opinions" on the insanity defense based on research she had conducted on the defense while in college, declared that she could follow the court's instructions and be fair.

It is axiomatic that where potential jurors question or doubt that they can be fair, the court should either elicit unequivocal assurances of their ability to be impartial or excuse them (*cf. People v Bludson*, 97 NY2d 644, 646 [2001]; *People v Johnson*, 94 NY2d 600, 615 [2000]). "By contrast, where prospective jurors unambiguously state that, despite preexisting opinions that might indicate bias, they will decide the case impartially and based on the evidence, the trial court has discretion to deny the challenge for cause if it determines that the juror's promise to be impartial is credible" (*People v Arnold*, 96 NY2d 358, 363 [2001]).

The Court of Appeals has established a commonsense rule regarding evaluation of potential juror bias, recognizing that "most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities (a determination committed largely to judgment of the Trial Judge with his peculiar opportunities to make a fair evaluation) that his excuse is warranted" (*People v Williams*, 63 NY2d 882, 885 [1984]).

*People v Arnold* (*supra*), relied on by the dissent, is not to the contrary. The defendant in *Arnold* was accused of stabbing his former girlfriend. He asserted a justification defense, alleging that she initiated the incident by attacking him with a razor. During voir dire, one prospective juror, who held a bachelor's degree with a major in sociology and a minor in women's studies, stated that she had done "a lot of research" (96 NY2d at

360) on domestic violence and battered woman's syndrome. When asked by defense counsel if she felt this would make her "another witness in the case, an expert if you will, on that area with the other jurors" creating "a problem" during deliberations, the prospective juror answered, "I think so." (*Id.* at 360-361.) When defense counsel then asked if she would rather serve as a juror on another type of case, she responded, "I think I would." (*Id.* at 361.)

Defense counsel's challenge for cause in *Arnold* was denied without further inquiry of the prospective juror. The Appellate Division reversed, holding that once a prospective juror voices doubt about her impartiality or ability to refrain from becoming a witness or expert in the jury room, "it was incumbent upon the court to ascertain that her prior state of mind would not influence her verdict and that she would render an impartial verdict based on the evidence" (272 AD2d 857, 858 [2000]). In affirming, the Court of Appeals acknowledged that while "each juror inevitably brings to the jury room a lifetime of experience that will necessarily inform her assessment of the witnesses and the evidence," when a juror reveals doubt about her ability to serve impartially because of that experience, that juror "must clearly express that any prior experiences or opinions that reveal the potential for bias will not prevent them from reaching an impartial verdict" (96 NY2d at 362).

Here, the prospective juror unequivocally stated in the initial voir dire that she could follow the court's instructions on the law. Unlike *Arnold*, the court here did conduct follow up questioning of the prospective juror and also permitted the prosecutor and defense counsel to make additional inquiries regarding her opinions, her ability to be fair to both sides and her commitment to render a verdict based solely on the evidence adduced at trial. During that individual questioning by the attorneys and the court, she again unequivocally stated that despite her prior experiences, biases and strong opinions, she could follow the court's instructions and apply them to the evidence in the case, whether she agreed with them or not. The fact that some of her responses were couched in terms such as "think" or "try" does not make her otherwise unequivocal answers less so (*see People v Shulman*, 6 NY3d 1, 28 [2005], *cert denied* 547 US 1043 [2006]; *see also People v Rivera*, 33 AD3d 303 [2006], *affd* 9 NY3d 904 [2007]).

The prospective juror's responses, taken in context and viewed as a whole, did not cast doubt on her ability to reach a fair and impartial verdict (*see People v Chambers*, 97 NY2d 417 [2002]; *Arnold*, 96 NY2d at 363).

Defendant's claim under *People v Rosario* (9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]) does not warrant reversal. The documents at issue did not qualify as *Rosario* material, and in any event, defendant was not prejudiced by their nondisclosure (*see* CPL 240.75).

We have considered and rejected defendant's remaining claims. Concur—Mazzarelli, J.P., Sweeny, Renwick and Román, JJ.

Freedman, J., dissents in a memorandum as follows: I believe that pursuant to the Court of Appeals holding in *People v Arnold* (96 NY2d 358 [2001]), reversal is mandated because of the trial court's failure to grant defendant's challenge for cause for prospective juror number 6.

Defendant's first trial resulted in a mistrial when the jury was unable to reach a verdict. On his retrial, defendant was convicted of 53 counts, including attempted murder in the second degree and assault in the first degree, both as hate crimes, and was acquitted of attempted murder in the first degree. The only defense raised was that defendant was not responsible by reason of mental disease when he committed the criminal acts. The psychiatrist called by the People found that defendant was legally sane when he acted, but other examining psychiatrists found defendant to be seriously delusional and/or insane.

During the voir dire, the court asked the prospective juror, an in-house lawyer for a company, if "you would be able to follow my legal instructions, whether or not they rang a bell or agreed with something you have studied already." She responded: "I would say yes, but I think that I should disclose that when I was in college, I did a psychiatric internship at John[s] Hopkins, and I wrote a thesis paper that examined whether or not the insanity defense should be abolished." The prospective juror added that she had taken a position in her paper, but "I think that I could listen and apply your instructions." When the prosecutor asked the prospective juror whether her opinions about the insanity defense would prevent her from reaching a verdict, she replied that "I would like to think I could follow the judge's instructions, but I have very strong opinions, and I think my experience with research of the insanity defense and their successes over the years, I don't know." She added, "I don't know if I can ignore my prior experiences."

Defense counsel challenged the prospective juror for cause, arguing that she did not know if the prospective juror could be fair, given her strong opinions, and that she posed a danger of becoming an expert in the jury room. The court agreed to question the prospective juror further.

During the follow-up questioning, the prospective juror first indicated that she could apply the judge's definition of lack of capacity and follow his jury instructions, whether or not she agreed with them. However, on further questioning by defense counsel, the prospective juror stated that "I have very strong opinions of what constitutes a mental defect or mental illness that would make someone be found not guilty for their actions." She added that "As a lawyer, I would like to think I could listen to the judge," but "to be fair, I feel like I come in here with a strong bias."

When the prosecutor questioned the prospective juror, she stated: "I can apply the law, but I find that listening to the evidence—you have to interpret the law and apply the law to the way you interpret the evidence, and I feel I might be biased in the way that I interpret the evidence." When the prosecutor then queried, "So, you can't give both sides a fair trial?" she responded, "I'd like to try, but I don't know if I would be the best person to do that."*

Thereafter, the court denied the challenge for cause, forcing defense counsel to exercise a peremptory challenge to remove the prospective juror. Before exercising the challenge, defense counsel noted for the record that the prospective juror had indicated she was coming to the case with a bias that would affect how she would listen to and evaluate the evidence. Thereafter, defendant exhausted all of his remaining challenges during the voir dire.

In *People v Arnold*, a case involving domestic violence, the Court of Appeals sustained reversal of a conviction where the trial court had denied the defendant's challenge for cause of a prospective juror who during voir dire had stated that while in college, she had researched the subjects of domestic violence and battered women's syndrome, and that her background might be "a problem." (96 NY2d at 361.) The prospective juror did not say she would not listen to the law or would be unfair. When the court asked the panel of prospective jurors whether they could follow the law as instructed and whether they agreed that they would not use this case as a "referendum" on "crime, domestic abuse or violence in the streets," the prospective juror answered "yes." (*Id.*) As in this case, the defense counsel in *Arnold* peremptorily challenged the prospective juror after the court denied a for-cause challenge, and then exhausted remaining challenges before a jury was selected.

In *Arnold*, the Court of Appeals noted that CPL 270.20 (1) (b)

---

* This sentence is from a corrected copy of the settled transcript.

permits a juror to be. challenged for cause if that juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at trial." (96 NY2d at 362.) The Court held that "a juror who has revealed doubt, because of prior knowledge or opinion, about her ability to serve impartially must be excused unless the juror states unequivocally on the record that she can be fair" (96 NY2d at 362). The Court added, "If there is any doubt about a prospective. juror's impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have 'replaced one impartial juror with another' " (*id.*, quoting *People v Culhane*, 33 NY2d 90, 108 n 3 [1973]; *see also People v Johnson*, 94 NY2d 600 [2000]). The Court concluded that "[p]rospective jurors who make statements that cast serious doubt on their ability to render an impartial verdict, and who have given less-than-unequivocal assurances of impartiality, must be excused" (96 NY2d at 363).

While the prospective juror in this case indicated that she would try to follow the judge's instructions and never said that she could not be fair, she twice stated that because of her extensive research into the insanity defense she was biased about how it should be applied, and that she felt her background would affect her interpretation of the law. Contrary to the majority, I find that in the context of the whole record, the prospective juror's self-acknowledged bias about the insanity defense, which was critical to defendant's case, was not the unequivocal assurance of impartiality to which defendant was entitled. Accordingly, the trial court should have granted the challenge for cause.