Devine, J.
(dissenting). I do not agree with my colleagues that the facts of this case required County Court to excuse prospective juror No. 383 for cause and, as such, I dissent.
We are in agreement that the judgment of conviction was supported in all respects by the trial evidence, and I wish to detail some of that evidence in order to illuminate the emotional quagmire that the jurors were forced to enter in order to render a verdict. Physical examinations of the five-year-old victim revealed that bruising, abrasions and other injuries covered his body, and the trial record is replete with proof that those injuries were the result of vicious abuse inflicted by defendant. Among the punishments observed by defendant’s paramour was one on November 11, 2012, when she saw defendant pick up the victim by the neck and repeatedly slam his head against a wall. The fatal injuries similarly stemmed from blunt force trauma to the head, which led to brain swelling, subdural hematoma and cell death. The medical evidence indicated that these injuries could only have been caused by the type of severe force that would be encountered in a heavy blow, a fall from a great height or an automobile accident. Several physicians further opined that the killing trauma must have occurred in the hours before the victim became unresponsive on the morning of November 15, 2012.
In that regard, defendant was very angry with the victim the night before his death. Defendant’s paramour awoke around 2:30 a.m. on November 15, 2012 to find defendant missing from their bedroom, and he failed to offer a persuasive explanation for his absence when he returned to bed. The victim was unsteady, pale and disoriented when defendant woke him up *1373 the next morning, and defendant had to guide him to the bathroom. Defendant was entirely unconcerned by these signs of distress, instead slamming the victim on the floor and screaming that he should be able to use the bathroom on his own. Despite the fact that the victim lost consciousness shortly afterwards, defendant forbade his paramour from calling 911 until after he left for an appointment, and he wrote down a cover story for her to relate to the authorities. She eventually summoned assistance at 9:30 a.m. and reported that the victim had hit his head after jumping on his bed, although she recanted that story in her trial testimony. The victim died shortly thereafter.
With that backdrop in mind, I turn to voir dire. Defense counsel acknowledged the emotional nature of the case, and asked the prospective jurors whether they would be so bothered by the fact that the victim was five years old that they would “close their mind[s] ... to the evidence.” One of the prospective jurors indicated that, although she had not predetermined the guilt of defendant, she would have a difficult time being fair “if it ever got to that point.” Defense counsel then questioned the other venirepersons as to whether they felt that they could be fair, at which point juror No. 383 said that she could not “do it” given that an adult had allegedly attacked such a young victim. Juror No. 383 then agreed with defense counsel that the burden rested with the People to prove that defendant was guilty despite the case being an “emotional” one involving a victimized child, and indicated that she had no problem with that. She went on to state, however, that she did not know if she would have difficulty acquitting defendant if the People failed to meet their burden of proof.
There is no question that these responses, from juror No. 383 and others, obliged County Court to obtain “unequivocal” assurances from any prospective juror who expressed concerns about his or her ability to be fair “that his [or her] prior state of mind concerning either the case or either of the parties will not influence his [or her] verdict, and . . . that he [or she] will render an impartial verdict based solely on the evidence” (People v Biondo, 41 NY2d 483, 485 [1977], cert denied 434 US 928 [1977]; see People v Johnson, 94 NY2d 600, 612 [2000]; People v Blyden, 55 NY2d 73, 78 [1982]). County Court endeavored to do so, beginning by telling the prospective jurors that “[o]bviously nobody wants to hear a case about a death of a five year old but because it’s a five year old doesn’t mean that anybody is guilty of it,” and that “everybody” has been wrongfully accused of having done something at one point or another *1374 in their lives. County Court then reiterated that the People would have to prove their case beyond a reasonable doubt, and questioned one prospective juror as to whether he could be fair and impartial in light of those principles. That prospective juror indicated that he could not be, prompting County Court to turn to juror No. 383 and question her individually as follows:
“THE COURT: . . . [S]ame questions for you. If the [People are] able to prove their case beyond a reasonable doubt, what would your fair and impartial verdict be?
“PROSPECTIVE JUROR NO. 383: Guilty if they prove it guilty.
“THE COURT: Okay. Now, let’s say they bring in lots and lots of witnesses, lots of evidence, lots of DNA, lots of pictures and whatever, but you’re not convinced beyond a reasonable doubt. Let’s say you’re pretty sure, I think maybe he did it but I have a reasonable doubt about this, then what does your verdict have to be?
“PROSPECTIVE JUROR NO. 383: I would have to say not guilty, you know, if they can’t do it to my satisfaction.
“THE COURT: Yes, exactly, and that’s exactly the way it has to be. It’s all up to your satisfaction. It has to be proved beyond a reasonable doubt as you see that and as I tell you what the law is. Would you have any problem with saying that the defendant is not guilty if they don’t prove their case?
“PROSPECTIVE JUROR NO. 383: No, if [the prosecutor] doesn’t have it, if she can’t prove it.
“THE COURT: All right. That’s good.”
Shortly thereafter, County Court further questioned juror No. 383 regarding her willingness to follow its legal instructions in rendering a verdict, and she agreed that she would “follow the law as . . . instruct[ed] ... at the end of the case.” County Court then denied defendant’s challenge for cause, and juror No. 383 was excused via a peremptory challenge.
The record does not suggest that juror No. 383 harbored any specific animus toward defendant. It does demonstrate her fears that she could not be fair given the fact that horrible crimes were committed against a young victim, but “most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box” (People v Williams, 63 NY2d 882, 885 [1984]). The law does not demand that a prospective juror be a heartless automaton or evince a “total absence of prejudice”; it instead requires such a person to express a “stated readiness to lay his [or her] feelings aside in the discharge of his [or her] *1375 duties as a juror” (id.) see People v Arnold, 96 NY2d 358, 362 [2001]). Accordingly, “where [a] prospective juror[ ] unambiguously state [s] that, despite preexisting opinions that might indicate bias, [he or she] will decide the case impartially and based on the evidence, the trial court has discretion to deny the challenge for cause if it determines that the juror’s promise to be impartial is credible” (People v Arnold, 96 NY2d at 363; see People v Wlasiuk, 90 AD3d 1405, 1411 [2011]).
County Court noted the disturbing nature of the case and stressed that the death of the victim did not necessarily implicate defendant in that death. County Court then questioned one prospective juror as to whether he could be fair and impartial and, when viewed in that context, immediately turning to juror No. 383 and posing the “same questions” to her can only be viewed as an attempt to “force her to confront the crucial question [of] whether she could be fair to this defendant in light of her expressed predisposition” (People v Arnold, 96 NY2d at 363-364; compare People v Harris, 19 NY3d 679, 685-686 [2012]; People v Johnson, 17 NY3d 752, 753 [2011]; People v McGuire, 101 AD3d 1386, 1388-1389 [2012]). She thereafter confirmed that a “fair and impartial verdict” of guilt could only flow from the People meeting their burden of proof, and provided unequivocal assurances that she would not have “any problem” in following the law and acquitting defendant if the People failed to meet that burden. County Court plainly credited those assurances despite the prior indications that she might not be able to do so. Thus, upon the facts of this case, I perceive no abuse of discretion in the denial of defendant’s challenge for cause (see People v Arnold, 96 NY2d at 363; People v Hoffmann, 122 AD3d 945, 946 [2014], lv denied 24 NY3d 1219 [2015]; People v Williams, 107 AD3d 746, 747 [2013], lv denied 21 NY3d 1047 [2013]; People v Knowles, 79 AD3d 16, 23 [2010], lv denied 16 NY3d 896 [2011]). Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.