JUSTICE HOOD,
dissenting.
¶26 Jurors 7,10, and 12 all indicated reluctance to apply the law protecting a defendant’s constitutional right to remain silent at trial, even after the trial court had instructed them about how they must apply that right.
¶27 In the absence of effective rehabilitation, then, these jurors should have been disqualified. The majority does not seem to disagree. See maj. op. ¶ 21 (“Thus, when the jurors at issue here answered ‘yes’ to defense counsel’s question of whether they would have difficulty following the court’s instruction to the contrary, they required rehabilitation in order to serve on the jury.”).
¶28 So, the question becomes whether these jurors’ silence alone constitutes evidence of effective rehabilitation. Put differently: Should we allow trial courts to keep such jurors based on questionable inferences about what their silence means? Or should we simply require trial courts to ask each reluctant juror after further admonition *532 whether the juror can apply the law as that juror has been instructed?
¶29 I vote for the latter. While the majority’s approach arguably has the virtue of greater efficiency, that efficiency in my estimation comes at too high a cost, particularly when a constitutional right is at stake and there is a safer approach that requires so little more,- Because I believe a defendant’s right to an impartial jury is too fundamental to our criminal-justice system to be left to guesswork about the meaning of a juror’s silence, I would affirm the division’s judgment and require the trial court to find that a juror who has taken a disqualifying position has affirmatively retreated from that position. Because there was no such affirmative retreat here, I respectfully dissent.
I. Analysis
¶30 The majority’s reliance on People v. Young, 16 P.3d 821 (Colo. 2001) seems misplaced. Young is not a pure silence case. On the contrary, the juror at issue there amended his views during the very kind of followup questioning ! advocate here. Id at 826. While the court referenced the juror’s failure to disagree with the statement of law at issue, that reference came after our emphasis of a much more revealing colloquy with the juror. In other words, there was silence plus specific discussion. Therefore, the majority today takes us well beyond Young.
¶31 Regardless, there are at least three reasons courts should not rely solely on jurors’ silence for rehabilitation, which Judge Webb articulated well in the opinion below. I turn to those now.
¶32 First and foremost, as I’ve already mentioned, the light to an impartial júry 'is too fundamental to leave to speculation. Both the United States Constitution and the Colorado Constitution guarantee the right to an impartial jury. U.S. Const. amend. VI; Colo. Const. art. II, § 16. In order for a jury to be impartial, it must demonstrate a willingness to follow the law — including, above all, the law concerning the defendant’s core constitutional protections. See Young, 16 P.3d at 824. The Supreme: Court has explained that the Fifth Amendment’s privilege against self-incrimination “reflects many of our fundamental values and most noble aspirations.” Carter v. Kentucky, 450 U.S. 288, 299, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) (citation omitted); see U.S. Const. amend. V (“No person ... shall be compelled in any criminal case to be a witness against himself....”). When jurors have expressed an inability to afford the defendant such a bedrock constitutional safeguard, “[m]ere silence does not sufficiently protect” the right to an impartial jury. People v. Clemens, 2013 COA 162, ¶ 26, — P.3d ——.
¶33 Second, “silence in the face of group questions does not force jurors to engage in [the] type of critical self-reflection” necessary to confront their predispositions. Id. at ¶ 28; see People v. Arnold, 96 N.Y.2d 358, 729 N.Y.S.2d 51, 763 N.E.2d 846, 852 (2001). Keep in mind, we’re not discussing jurors who think criminal law works one way (i.e,, we should hear “both sides”) and merely need to be instructed that it actually works a different way. See maj. op. ¶¶ 16-17. In individual exchanges with each of these three jurors, defense counsel correctly reiterated how the law works — echoing the court’s initial admonition that they could not use the defendant’s refusal to testify as an inference of guilt — and immediately afterwards asked if the juror would have concerns about following that law. Each juror answered in the affirmative. Group admonition is no solution to this problem, because these jurors may not even know themselves whether they can properly apply the law without first going through the exercise of talking about it. At the very least, such jurors should be politely confronted and asked to confirm that they 'can apply the law, or they should be excused.
¶34 Third, jurors’ silence gives too little for a trial court to assess and for an. appellate court to review. See Clemens, ¶ 29. I,agree with the majority that the trial court is in a superior position to gauge jurors’ demeanor and tone, maj. op. ¶ 24, but when jurors sit silently in response to group questions, what is there to gauge? Were this a case where the trial court noted that these jurors nodded .their heads, or even stared pensively, we might have a more meaningful conversation about whether these jurors had embraced *533 the court’s mandate. But here we do not even have that.
¶35 Instead, we are left to surmise' what these jurors may have been thinking based on interactions during other parts of voir dire. I fear this exercise is too speculative for a trial judge sitting in the room, let alone a reviewing court with a cold record. Indeed, the record before us highlights the problem. Each of the three jurors’ problematic statements was made in response to a group question by defense counsel. But beyond that question, Juror 10 never responded to any other group question. Juror 7 responded to only one other group question during the entire voir dire, and that question was purely factual (Have you ever been involved in a court case?). Prom this, the majority finds that the three jurors "actively expressed their opinions and participated with the court and counsel during the entire voir dire.” Maj. op. ¶ 24. I would categorize their participation differently. And this is the source of my concern — it seems that a juror’s likeliness to respond to challenging group questions is largely in the eye of the beholder.
¶36 Finally, I think the majority overestimates. the willingness of jurors to share information. After all, how much forthrightness can we really expect after jurors have been admonished in front of a group of strangers? Even if the lawyers and the judge succeed in quickly cultivating an environment in which jurors feel more at ease in expressing their views, most will remain intimidated. See United States v. Hill, 552 F.3d 541, 548 (7th Cir. 2008). Common experience teaches us that most people fear public speaking. Most have little or no experience in a courtroom. Most know little about the law, other- than the need to show deference to the person wearing the robe. See Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894) (“It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling.”). If the robed authority figure interjects and lectures the entire venire, does common sense suggest that most people listening would be eager to throw up a hand and persist in disqualifying views? Probably not (unless that person is seeking to avoid jury service altogether). In point of fact, after the judge here lectured about the Fifth Amendment and-asked if anyone would still have difficulty abiding it, two jurors— numbers 47 and 48 — who would later admit such difficulty (to defense counsel), remained silent.
¶37 At the very least, then, it seems trial courts should individually question jurors like Jurors 7, 10, and 12 about their disqualifying statements and require an affirmative retreat from those statements. Clemens, ¶ 27; see also Arnold, 729 N.Y.S.2d 51, 753 N.E.2d at 852 (“[Njothing less' than a personal, unequivocal assurance of impartiality can cure a juror’s prior indication, that she is predisposed against a particular defendant or particular type of case.”).
II. Conclusion
¶38 Because these jurors did not affirmatively retreat from a disqualifying position, I would hold that the trial court erred, which takes us to the other question on certiorari: whether such, an error is reversible, Like the majority, I will not reach that question. While it certainly warrants discussion, it warrants a full-court discussion. That will have to wait for another day.
¶39 For the foregoing reasons, I respectfully dissent.
I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE GABRIEL join in this dissent.