[978 NE2d 1246, 954 NYS2d 777]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN L. HARRIS, Appellant.

Argued September 11, 2012; decided October 18, 2012

### POINTS OF COUNSEL

*Easton Thompson Kasperek Shiffrin LLP*, Rochester (*William T. Easton* and *Brian Shiffrin* of counsel), for appellant. I. The prosecution failed to prove that Calvin Harris was guilty of the murder of Michele Harris. (*People v Cintron*, 95 NY2d 329; *People v Rossey*, 89 NY2d 970; *People v Kennedy*, 47 NY2d 196; *People v Way*, 59 NY2d 361; *People v Barnes*, 50 NY2d 375; *People v Cleague*, 22 NY2d 363; *People v Ford*, 66 NY2d 428; *People v Benzinger*, 36 NY2d 29; *People v Lipsky*, 57 NY2d 560; *Ruloff v People*, 18 NY 179.) II. The trial court below committed reversible error when it denied Calvin Harris's challenge for cause to a prospective juror who had a preexisting opinion as to guilt and did not give an unequivocal assurance that this opinion would not affect her consideration of the case. (*People v Arnold*, 96 NY2d 358; *People v Culhane*, 33 NY2d 90; *People v Nicholas*, 98 NY2d 749; *Irvin v Dowd*, 366 US 717; *People v Johnson*, 94

NY2d 600; *People v Johnson*, 17 NY3d 752; *People v Chambers*, 97 NY2d 417; *People v Torpey*, 63 NY2d 361; *People v Bludson*, 97 NY2d 644; *People v Cahill*, 2 NY3d 14.) III. Calvin Harris was denied his right to a fair trial before an impartial jury because inflammatory and prejudicial pretrial publicity saturated the community from which the jury was drawn. (*People v Mahboubian*, 74 NY2d 174; *People v Lopez*, 68 NY2d 683; *Irvin v Dowd*, 366 US 717; *Sheppard v Maxwell*, 384 US 333; *Mu'Min v Virginia*, 500 US 415; *Patton v Yount*, 467 US 1025; *Estes v Texas*, 381 US 532; *United States v Dellinger*, 472 F2d 340; *People v Boss*, 261 AD2d 1; *People v Boudin*, 90 AD2d 253.) IV. The rulings of the court below precluding the admission of the exculpatory and reliable statements and affidavit of John Steele violated New York's evidentiary rules and Calvin Harris's rights to present a defense and to a fair trial as guaranteed by both the United States and New York Constitutions. (*Crawford v Washington*, 541 US 36; *Chambers v Mississippi*, 410 US 284; *People v Robinson*, 89 NY2d 648; *People v Oxley*, 64 AD3d 1078; *Berger v United States*, 295 US 78; *People v Brown*, 26 NY2d 88; *Green v Georgia*, 442 US 95; *Holmes v South Carolina*, 547 US 319; *People v Darrisaw*, 206 AD2d 661; *Rosario v Kuhlman*, 839 F2d 918.) V. The lower court improperly admitted hearsay statements from Michele Harris to her sisters-in-law in violation of Calvin Harris's rights under New York evidentiary law and the New York and United States Constitutions, then improperly refused to give a limiting instruction that such statements could not be considered for their truth. (*People v Ewell*, 12 AD3d 616, 4 NY3d 763; *People v Davis*, 23 AD3d 833; *People v Davis*, 87 AD3d 1332; *People v Reynoso*, 309 AD2d 769, 2 NY3d 820; *People v Bierenbaum*, 301 AD2d 119; *People v Stanard*, 32 NY2d 143; *People v Perez*, 9 AD3d 376; *People v Crimmins*, 36 NY2d 230.) VI. The prosecutor engaged in multiple acts of misconduct which deprived Calvin Harris of his right to a fair trial as guaranteed by both the United States and New York Constitutions. (*People v Zimmer*, 51 NY2d 390; *People v Grice*, 100 AD2d 419; *People v Adams*, 21 NY2d 397; *People v Fielding*, 158 NY 542; *Berger v United States*, 295 US 78; *People v Diotte*, 63 AD3d 1281; *People v Skinner*, 298 AD2d 625; *People v Walters*, 251 AD2d 433; *People v Ortiz*, 125 AD2d 502; *People v Allen*, 74 AD2d 640.)

*Gerald A. Keene, District Attorney*, Owego, for respondent. I. The evidence was legally sufficient to convict defendant of murder in the second degree. (*People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Acosta*, 80 NY2d 665; *People v Danielson*, 9 NY3d 342; *People v Cintron*, 95 NY2d 329; *People v*

*Tejeda*, 73 NY2d 958; *People v Grassi*, 92 NY2d 695; *People v Rossey*, 89 NY2d 970; *People v Williams*, 84 NY2d 925; *People v Thibeault*, 73 AD3d 1237, 15 NY3d 810.) II. The trial court did not err by denying defendant's challenge for cause. (*People v Arnold*, 96 NY2d 358; *People v Stroman*, 6 AD3d 818, 3 NY3d 648; *People v Hernandez*, 222 AD2d 696, 88 NY2d 879; *People v Shulman*, 6 NY3d 1; *People v Chambers*, 97 NY2d 417; *People v Johnson*, 94 NY2d 600; *People v Williams*, 63 NY2d 882; *People v Torpey*, 63 NY2d 361; *People v Johnson*, 17 NY3d 752.) III. The Appellate Division did not err in denying the three requests for a change of venue. (*People v Cahill*, 2 NY3d 14; *People v Boudin*, 90 AD2d 253; *Rideau v Louisiana*, 373 US 723; *People v Martin*, 19 AD2d 804; *People v Brensic*, 136 AD2d 169; *People v Acomb*, 94 AD2d 978; *People v Boss*, 261 AD2d 1; *People v Bosket*, 216 AD2d 791; *United States v Yousef*, 327 F3d 56; *People v Berry*, 235 AD2d 571.) IV. The trial court did not err by refusing to permit defendant to offer inadmissible, unreliable hearsay. (*Chambers v Mississippi*, 410 US 284; *People v Robinson*, 89 NY2d 648; *People v Oxley*, 64 AD3d 1078; *Holmes v South Carolina*, 547 US 319; *Gottwald v Medinger*, 257 App Div 107; *People v Darrisaw*, 206 AD2d 661.) V. The lower court did not err by allowing the jury to hear admissions made by defendant; the jury instruction concerning these admissions was proper. (*People v McEaddy*, 41 AD3d 877; *Crawford v Washington*, 541 US 36; *People v Ewell*, 12 AD3d 616, 4 NY3d 763; *People v Perez*, 9 AD3d 376, 3 NY3d 710; *People v Glover*, 195 AD2d 999, 82 NY2d 849; *People v Reynoso*, 2 NY3d 820; *People v Cardew*, 132 AD2d 721, 70 NY2d 953; *People v Bierenbaum*, 301 AD2d 119; *People v Davis*, 23 AD3d 833, 6 NY3d 811.) VI. There was no prosecutorial misconduct in this case. (*People v Cherry*, 46 AD3d 1234, 10 NY3d 839; *People v Beyer*, 21 AD3d 592, 6 NY3d 752; *People v Townsley*, 240 AD2d 955, 90 NY2d 943; *People v Stasiak*, 25 AD3d 1025; *People v Greene*, 13 AD3d 991, 5 NY3d 789; *People v Tarantola*, 178 AD2d 768, 79 NY2d 954; *People v Grady*, 40 AD3d 1368, 9 NY3d 923; *People v Skinner*, 298 AD2d 625; *People v Hemmins*, 290 AD2d 219, 97 NY2d 755; *People v Henderson*, 13 NY3d 844.)

## OPINION OF THE COURT

Pigott, J.

Michele Harris, mother of four young children and defendant's estranged wife, was last seen on the evening of September 11, 2001. At approximately 7:00 a.m. the following day, the Harris family babysitter, Barbara Thayer, discovered Michele's

unoccupied minivan at the bottom of the quarter-mile driveway of the Harris residence, which is situated on a 200-acre estate in a remote area of Tioga County. Although the Harrises were in the process of divorcing, they continued living in the same residence, albeit sleeping in separate rooms.

After driving Ms. Thayer to the end of the driveway to retrieve Michele's vehicle, defendant, the owner of several car dealerships, left for work. When a friend of Michele's called the Harris household and was told by Ms. Thayer that Michele had not returned home the night before, the friend called Michele's divorce attorney who, in turn, contacted state police. Later that morning, police questioned defendant at his dealership concerning Michele's disappearance. Defendant accompanied police to his home and consented to a search of his residence and Michele's minivan, eventually leaving the officers at the residence and returning to work. Later that day, defendant gave police written consent to search his residence and vehicles.

On September 14, 2001, evidence technicians discovered blood on the tiled floor of a kitchen alcove, on door moldings and surfaces leading to the garage and on the wall of the garage leading into the house. At that point, police obtained a search warrant and, upon returning the following day, discovered blood on the garage floor as well.[1]

The weekend following Michele's disappearance, defendant and his children visited defendant's brother in Cooperstown. During dinner, defendant's sisters-in-law Francine and Mary Jo Harris confronted defendant about statements he had allegedly made to Michele. According to Francine and Mary Jo, Michele told them in March 2001 that defendant threatened her by stating that he would not need a gun to kill her, that police would never find her body and that he would never be arrested.[2] The police investigation, spanning several years, produced neither a body nor a weapon.

I

In 2005, defendant was indicted on one count of murder in the second degree. A jury convicted him of that offense in the

---

1. Months later, police also examined a kitchen throw rug and discovered what appeared to be blood stains.

2. At the second trial, defendant denied making these statements. Francine and Mary Jo, however, testified that defendant initially denied making the statements, but then said that he may have said something like that but that did not mean that he was going to kill Michele.

spring of 2007. The day after the verdict, a local farmhand came forward with information that he had seen Michele and a man in his mid-20s at the end of the Harris driveway at approximately 5:30 a.m. on September 12, 2001. Armed with this new information, defense counsel moved, pursuant to CPL 330.30, to set aside the verdict. The trial court granted the motion, and its order was affirmed on appeal (55 AD3d 958 [3d Dept 2008]).

## II

Given the high-profile nature of the case, there was significant media coverage in local newspapers and on television, including two national broadcasts, covering Michele's disappearance and defendant's first trial. Defense counsel made two change of venue motions prior to the retrial, citing "prejudicial publicity." Each motion was denied, as was a third motion made by defense counsel during jury selection.

After a lengthy retrial that included extensive blood spatter and DNA evidence and testimony concerning threatening statements defendant purportedly made to Michele, a jury once again convicted defendant of murder in the second degree. The Appellate Division, in a 3-1 decision, affirmed the judgment, holding, among other things, that the verdict was supported by legally sufficient evidence, that the trial court properly denied a for-cause challenge of a prospective juror made by defendant, and that the trial court properly allowed in evidence Michele's hearsay statements to Francine and Mary Jo for the limited purpose of allowing the jury to evaluate defendant's reaction to those accusations (88 AD3d 83 [3d Dept 2011]). The dissenting Justice, in addition to arguing that the verdict was not supported by legally sufficient evidence, asserted that the trial court committed reversible error in denying defendant's for-cause challenge of the prospective juror and in giving an inadequate limiting instruction concerning Michele's hearsay statements to Francine and Mary Jo. A Justice of the Appellate Division granted defendant leave to appeal (2011 NY Slip Op 83081[U] [2011]). We now reverse the order of the Appellate Division and remit for a new trial.

## III

The Appellate Division properly held that the guilty verdict was supported by legally sufficient evidence. However, a critical error occurred during voir dire when County Court failed

to elicit from a prospective juror an unequivocal assurance of her ability to be impartial after she apprised defense counsel that she had a preexisting opinion as to defendant's guilt or innocence.

At voir dire, the prospective juror acknowledged that she had followed the case in the media and that she had "an opinion slightly more in one direction than the other" concerning defendant's guilt or innocence. When asked by defense counsel if her opinion would impact her ability to judge the case based solely on the evidence presented at trial, the prospective juror responded, "[H]ow I feel, *opinion-wise, won't be all of what I consider if I'm in the jury*," but admitted that it would be *"[a] slight part"* of what she would consider (emphasis supplied).

Defense counsel challenged the prospective juror for cause on the ground that she could not say that her preexisting opinion would have no effect on her ability to sit as a fair juror. The trial court denied the challenge and defendant utilized a peremptory challenge on the prospective juror. Defendant exhausted his peremptory challenges, and, therefore, preserved this issue for review (*see* CPL 270.20 [2]).

CPL 270.20 (1) (b) provides that a party may challenge a potential juror for cause if the juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial." We have consistently held that "a prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the juror states unequivocally on the record that he or she can be fair and impartial" (*People v Chambers*, 97 NY2d 417, 419 [2002]; *see People v Arnold*, 96 NY2d 358, 363 [2001]; *People v Johnson*, 94 NY2d 600, 614 [2000]). "[W]hen potential jurors themselves say they question or doubt they can be fair in the case, Trial Judges should either elicit some unequivocal assurance of their ability to be impartial when that is appropriate, or excuse the juror when that is appropriate," since, in most cases, "[t]he worst the court will have done . . . is to have replaced one impartial juror with another impartial juror" (*People v Johnson*, 17 NY3d 752, 753 [2011], citing *People v Johnson*, 94 NY2d 600, 616 [2000]).

The prospective juror had a preexisting opinion concerning defendant's guilt or innocence that cast serious doubt on her ability to render an impartial verdict. At that point, it was incumbent upon the trial court to conduct its own follow-up

inquiry of the prospective juror once she stated that her preexisting opinion would play only "[a] slight part" in her consideration of the evidence. Given the absence of that inquiring, the trial court committed reversible error in denying defendant's for-cause challenge (*see Johnson*, 17 NY3d at 753).

■ Finally, while the trial court properly allowed in evidence Michele's hearsay statements to Francine and Mary Jo for the limited purpose of providing context as to defendant's reaction upon being confronted with them, it erred in failing to grant defendant's request for a limiting instruction to the jury not to consider the statements for their truth. The trial court acknowledged that Michele's statements constituted hearsay, but denied defendant's request for a limiting instruction because it did not "want to unnecessarily confuse the jury." It opted instead to charge the jury that the statements constituted hearsay which would not normally be allowed in evidence because its truthfulness could not be tested under oath, and then stated: "You, the jury, may consider that testimony regarding this episode and determine what evidentiary value, if any, you choose to assign to the exchange that occurred between Mary Jo and Francine and Mr. Harris."

The trial court's failure to issue the appropriate limiting instruction was not harmless. In a case where there was no body or weapon, and the evidence against defendant was purely circumstantial, the danger that the jury accepted Michele's statements for truth was real. Although the court's instruction explained why the statements were admitted in evidence, it failed to apprise the jury that the statements were not to be considered for their truth. This error was compounded when the prosecutor in his summation relied on those statements as direct evidence that defendant had, in fact, murdered Michele and successfully hid her body, as he purportedly threatened Michele that he would do.

We are not unsympathetic to defendant's claim that prejudicial and inflammatory pretrial publicity saturated the community from which the jury was drawn and effectively deprived defendant of a fair trial by an impartial jury. A significantly high percentage of prospective jurors admitted to having heard about the case and nearly half had formed a preexisting opinion as to defendant's guilt or innocence. Notably, "as with so many other cases, the problem encountered with jury selection is inextricably linked to the problem of venue," and although media saturation by its very nature is prejudicial, "it is

unrealistic to expect and require jurors to be totally ignorant prior to trial of the facts and issues in certain cases" (*People v Culhane*, 33 NY2d 90, 110 [1973] [citations omitted]).

Although our decision to reverse the conviction and order a new trial is premised upon the trial court's denial of the for-cause challenge and failure to issue the appropriate limiting instruction, we are cognizant that publicity attending a third trial may render voir dire significantly burdensome. In such a case, to counter the potential "temptation to relax the rules and accept a doubtful juror so that the case may proceed to trial," we expect the trial court to exercise "special vigilance to insure that the adverse publicity does not infect the adjudicating process" and, in such exercise, strongly consider changing venue if for-cause disqualifications "become legion," rendering voir dire "hopelessly burdensome" (*Culhane*, 33 NY2d at 110 n 4).

We have considered defendant's remaining contentions and conclude that they are without merit.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH and JONES concur; Judge READ dissents and votes to reverse and dismiss the indictment for the reasons stated in so much of the dissenting opinion of Justice Bernard J. Malone at the Appellate Division as addressed sufficiency of the evidence (88 AD3d 83, at 98-120).

Order reversed, etc.