■ The People of the State of New York, Respondent, v Brandon Warrington, Appellant. [15 NYS3d 256]—

McCarthy, J.P. Appeal from a judgment of the County Court of Warren County (Hall Jr., J.), rendered July 11, 2013, upon a verdict convicting defendant of the crimes of murder in the second degree, manslaughter in the second degree and endangering the welfare of a child.

Defendant was indicted on charges of murder in the second degree, manslaughter in the second degree and endangering the welfare of a child, all of which related to the death of the five-year-old son of defendant's paramour. Following a jury trial, defendant was convicted as charged and sentenced to an aggregate prison term of 25 years to life. Defendant appeals, and we reverse.

County Court committed reversible error in denying defendant's motion to dismiss prospective juror No. 383 for cause.[1] Once a prospective juror has identified his or her own biased perspective, he or she "must expressly state that his [or her] prior state of mind concerning either the case or either of the parties will not influence his [or her] verdict, and he [or she] must also state that he [or she] will render an impartial verdict based solely on the evidence" (*People v Biondo*, 41 NY2d 483, 485 [1977], *cert denied* 434 US 928 [1977]; *accord People v Ortiz*, 37 AD3d 361, 362 [2007]; *see People v McGuire*, 101 AD3d 1386, 1389 [2012]; *People v Wilson*, 7 AD3d 549, 550 [2004]). "[N]othing less than a personal, unequivocal assurance of impartiality can cure a juror's prior indication that [he or] she is predisposed against a particular defendant or particular type of case" (*People v Arnold*, 96 NY2d 358, 364 [2001]), and, accordingly, the "bright-line standard . . . followed throughout the State" is "that a prospective juror who expresses partiality towards [one party] and cannot unequivocally promise to set aside this bias should be removed for cause" (*People v Johnson*, 94 NY2d 600, 614 [2000] [internal quotation marks and citation omitted]).

Turning to the record, in response to defense counsel's question, "Does anyone . . . feel . . . that they cannot be fair in this trial?," juror No. 383 volunteered, "It's a five year old

---

1. Defendant exhausted his peremptory challenges after using one on juror No. 383, making any error in regard to County Court's denial of defendant's request to dismiss that juror for cause reversible (*see People v Harris*, 19 NY3d 679, 685 [2012]; *People v Blyden*, 55 NY2d 73, 76 [1982]).

[victim.] Adult [defendant]. I can't do it."[2] Neither defense counsel nor County Court asked juror No. 383 any follow-up questions on that topic at that point in time. Later, defense counsel asked the jurors whether they could agree that "[t]he burden is for the People to prove beyond a reasonable doubt that [defendant] did it," and juror No. 383, collectively with all of the other prospective jurors, agreed. However, when defense counsel specifically asked juror No. 383 whether she would "have a problem finding . . . defendant not guilty if [the People did not] meet their burden," juror No. 383 responded, "I don't know." Later, the court directly addressed juror No. 383:

"THE COURT: . . . If the [People are] able to prove their case beyond a reasonable doubt, what would your fair and impartial verdict be?

"PROSPECTIVE JUROR NO. 383: Guilty if they prove it guilty.

"THE COURT: Okay. Now, let's say they bring in lots and lots of witnesses, lots of evidence, lots of DNA, lots of pictures and whatever, but you're not convinced beyond a reasonable doubt. Let's say you're pretty sure, I think maybe he did it but I have a reasonable doubt about this, then what does your verdict have to be?

"PROSPECTIVE JUROR NO. 383: I would have to say not guilty, you know, if they can't do it to my satisfaction.

"THE COURT: Yes, exactly, and that's exactly the way it has to be. It's all up to your satisfaction. It has to be proved beyond a reasonable doubt as you see that and as I tell you what the law is. Would you have any problem with saying that the defendant is not guilty if they don't prove their case?

"PROSPECTIVE JUROR NO. 383: No, if [the prosecutor] doesn't have it, if she can't prove it.

"THE COURT: All right. That's good."

Finally, the court turned to the issue of whether juror No. 383 would be able to follow the law regarding crediting witnesses:

"THE COURT: . . . Would you follow the law at the end of

---

2. Particularly considering juror No. 383's words, "I can't do it," it is notable that County Court had previously instructed this juror—along with all of the prospective jurors—in the following manner: "I need you to say yes [I can be fair and impartial], I will do this. . . . [I]t's just you need to state that yes, you'll do [it] or if you absolutely can't, tell us that too so we know you can't do it." Therefore, according to the court's own instructions, a potential juror was supposed to inform the court that he or she could not be fair and impartial in the event that he or she "absolutely" could not "do it."

the case and listen to what they have to say if somebody, if you think somebody lied about something, you don't have to believe anything they say. On the other hand, you don't have to not believe anything they say. You can believe the parts you think are true but not believe the parts you think are not?

"PROSPECTIVE JUROR NO. 383: I was just going to say I'll listen to what they have to say and then I'll draw my own conclusion.

"THE COURT: Okay. Then you'll follow the law as I instruct at the end of the case[?]

"PROSPECTIVE JUROR NO. 383: Yes."

Considering the entirety of the questions posed to juror No. 383 and her responses, juror No. 383 unambiguously acknowledged a form of bias—based on the respective ages of the victim and defendant—that she identified as preventing her from being a fair and impartial juror. After juror No. 383 identified her own bias, she was never asked a question that referenced whether she could set aside any biases she held, generally, or whether she could set aside her specific bias regarding the respective ages of defendant and the victim. Further, in her responses to questions posed to her, juror No. 383 never specifically made reference to the age issue after she identified it as preventing her from being fair and impartial, and she never agreed, more generally, that she could set aside any bias that she held and decide the case in a fair and impartial manner based on the evidence presented. Therefore, juror No. 383 did not "unambiguously state that, despite preexisting opinions that might indicate bias, [she would] decide the case impartially and based on the evidence," because she never made any statement regarding her preexisting opinion, let alone an unambiguous statement that she could set such opinion aside (*People v Arnold*, 96 NY2d at 363).[3] Accordingly, County Court committed reversible error in denying defendant's for-cause challenge to a juror who never contradicted or retracted her statement that her bias related to the respective ages of defendant and the victim prevented her from being a fair and impartial juror (*see People v Harris*, 19 NY3d 679, 685-686 [2012]; *People v Johnson*, 17 NY3d 752, 753 [2011]; *People v Nicholas*, 98 NY2d 749, 751-752 [2002]; *People v Arnold*, 96 NY2d at 363; *People v Torpey*, 63 NY2d 361, 369 [1984]; *People v Blyden*, 55 NY2d 73,

---

**3.** Despite this conclusion, we note that the record reflects that the District Attorney made multiple requests related to furthering County Court's voir dire inquiries and rehabilitation efforts. In our view, the District Attorney made honorable efforts in an attempt to ensure that defendant was provided a fair and impartial jury.

78 [1982]; *People v McGuire*, 101 AD3d at 1389; *People v Carpenter*, 35 AD3d 1092, 1093 [2006]; *People v McLean*, 24 AD3d 1110, 1111 [2005]; *compare People v Brown*, 121 AD3d 556, 557 [2014], *lv denied* 25 NY3d 949 [2015]; *People v Soto*, 235 AD2d 349, 349 [1997], *lv denied* 90 NY2d 898 [1997]).[4]

Finally, defendant's contentions that the verdict was based on legally insufficient evidence, that it was against the weight of the evidence and that he was convicted of an inclusory concurrent count are without merit. Defendant's remaining contentions are either meritless or rendered academic by this decision.

Egan Jr. and Clark, JJ., concur.

Devine, J. (dissenting). I do not agree with my colleagues that the facts of this case required County Court to excuse prospective juror No. 383 for cause and, as such, I dissent.

We are in agreement that the judgment of conviction was supported in all respects by the trial evidence, and I wish to detail some of that evidence in order to illuminate the emotional quagmire that the jurors were forced to enter in order to render a verdict. Physical examinations of the five-year-old victim revealed that bruising, abrasions and other injuries covered his body, and the trial record is replete with proof that those injuries were the result of vicious abuse inflicted by defendant. Among the punishments observed by defendant's paramour was one on November 11, 2012, when she saw defendant pick up the victim by the neck and repeatedly slam his head against a wall. The fatal injuries similarly stemmed from blunt force trauma to the head, which led to brain swelling, subdural hematoma and cell death. The medical evidence indicated that these injuries could only have been caused by the type of severe force that would be encountered in a heavy blow, a fall from a great height or an automobile accident. Several physicians further opined that the killing trauma must have occurred in the hours before the victim became unresponsive on the morning of November 15, 2012.

In that regard, defendant was very angry with the victim the night before his death. Defendant's paramour awoke around 2:30 a.m. on November 15, 2012 to find defendant missing from their bedroom, and he failed to offer a persuasive explanation for his absence when he returned to bed. The victim was unsteady, pale and disoriented when defendant woke him up

---

4. The deprivation of the right to a fair and impartial jury is not subject to harmless error analysis (*see Rose v Clark*, 478 US 570, 578 [1986]; *People v Cahill*, 2 NY3d 14, 49-50 [2003]; *People v Petke*, 125 AD3d 1103, 1105 [2015], *lv granted* 25 NY3d 1075 [2015]; *People v Russell*, 116 AD3d 1090, 1094 [2014]).

the next morning, and defendant had to guide him to the bathroom. Defendant was entirely unconcerned by these signs of distress, instead slamming the victim on the floor and screaming that he should be able to use the bathroom on his own. Despite the fact that the victim lost consciousness shortly afterwards, defendant forbade his paramour from calling 911 until after he left for an appointment, and he wrote down a cover story for her to relate to the authorities. She eventually summoned assistance at 9:30 a.m. and reported that the victim had hit his head after jumping on his bed, although she recanted that story in her trial testimony. The victim died shortly thereafter.

With that backdrop in mind, I turn to voir dire. Defense counsel acknowledged the emotional nature of the case, and asked the prospective jurors whether they would be so bothered by the fact that the victim was five years old that they would "close their mind[s] . . . to the evidence." One of the prospective jurors indicated that, although she had not predetermined the guilt of defendant, she would have a difficult time being fair "if it ever got to that point." Defense counsel then questioned the other venirepersons as to whether they felt that they could be fair, at which point juror No. 383 said that she could not "do it" given that an adult had allegedly attacked such a young victim. Juror No. 383 then agreed with defense counsel that the burden rested with the People to prove that defendant was guilty despite the case being an "emotional" one involving a victimized child, and indicated that she had no problem with that. She went on to state, however, that she did not know if she would have difficulty acquitting defendant if the People failed to meet their burden of proof.

There is no question that these responses, from juror No. 383 and others, obliged County Court to obtain "unequivocal" assurances from any prospective juror who expressed concerns about his or her ability to be fair "that his [or her] prior state of mind concerning either the case or either of the parties will not influence his [or her] verdict, and . . . that he [or she] will render an impartial verdict based solely on the evidence" (*People v Biondo*, 41 NY2d 483, 485 [1977], *cert denied* 434 US 928 [1977]; *see People v Johnson*, 94 NY2d 600, 612 [2000]; *People v Blyden*, 55 NY2d 73, 78 [1982]). County Court endeavored to do so, beginning by telling the prospective jurors that "[o]bviously nobody wants to hear a case about a death of a five year old but because it's a five year old doesn't mean that anybody is guilty of it," and that "everybody" has been wrongfully accused of having done something at one point or another

in their lives. County Court then reiterated that the People would have to prove their case beyond a reasonable doubt, and questioned one prospective juror as to whether he could be fair and impartial in light of those principles. That prospective juror indicated that he could not be, prompting County Court to turn to juror No. 383 and question her individually as follows:

"THE COURT: . . . [S]ame questions for you. If the [People are] able to prove their case beyond a reasonable doubt, what would your fair and impartial verdict be?

"PROSPECTIVE JUROR NO. 383: Guilty if they prove it guilty.

"THE COURT: Okay. Now, let's say they bring in lots and lots of witnesses, lots of evidence, lots of DNA, lots of pictures and whatever, but you're not convinced beyond a reasonable doubt. Let's say you're pretty sure, I think maybe he did it but I have a reasonable doubt about this, then what does your verdict have to be?

"PROSPECTIVE JUROR NO. 383: I would have to say not guilty, you know, if they can't do it to my satisfaction.

"THE COURT: Yes, exactly, and that's exactly the way it has to be. It's all up to your satisfaction. It has to be proved beyond a reasonable doubt as you see that and as I tell you what the law is. Would you have any problem with saying that the defendant is not guilty if they don't prove their case?

"PROSPECTIVE JUROR NO. 383: No, if [the prosecutor] doesn't have it, if she can't prove it.

"THE COURT: All right. That's good."

Shortly thereafter, County Court further questioned juror No. 383 regarding her willingness to follow its legal instructions in rendering a verdict, and she agreed that she would "follow the law as . . . instruct[ed] . . . at the end of the case." County Court then denied defendant's challenge for cause, and juror No. 383 was excused via a peremptory challenge.

The record does not suggest that juror No. 383 harbored any specific animus toward defendant. It does demonstrate her fears that she could not be fair given the fact that horrible crimes were committed against a young victim, but "most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box" (*People v Williams*, 63 NY2d 882, 885 [1984]). The law does not demand that a prospective juror be a heartless automaton or evince a "total absence of prejudice"; it instead requires such a person to express a "stated readiness to lay his [or her] feelings aside in the discharge of his [or her]

duties as a juror" (*id.*; *see People v Arnold*, 96 NY2d 358, 362 [2001]). Accordingly, "where [a] prospective juror[ ] unambiguously state[s] that, despite preexisting opinions that might indicate bias, [he or she] will decide the case impartially and based on the evidence, the trial court has discretion to deny the challenge for cause if it determines that the juror's promise to be impartial is credible" (*People v Arnold*, 96 NY2d at 363; *see People v Wlasiuk*, 90 AD3d 1405, 1411 [2011]).

County Court noted the disturbing nature of the case and stressed that the death of the victim did not necessarily implicate defendant in that death. County Court then questioned one prospective juror as to whether he could be fair and impartial and, when viewed in that context, immediately turning to juror No. 383 and posing the "same questions" to her can only be viewed as an attempt to "force her to confront the crucial question [of] whether she could be fair to this defendant in light of her expressed predisposition" (*People v Arnold*, 96 NY2d at 363-364; *compare People v Harris*, 19 NY3d 679, 685-686 [2012]; *People v Johnson*, 17 NY3d 752, 753 [2011]; *People v McGuire*, 101 AD3d 1386, 1388-1389 [2012]). She thereafter confirmed that a "fair and impartial verdict" of guilt could only flow from the People meeting their burden of proof, and provided unequivocal assurances that she would not have "any problem" in following the law and acquitting defendant if the People failed to meet that burden. County Court plainly credited those assurances despite the prior indications that she might not be able to do so. Thus, upon the facts of this case, I perceive no abuse of discretion in the denial of defendant's challenge for cause (*see People v Arnold*, 96 NY2d at 363; *People v Hoffmann*, 122 AD3d 945, 946 [2014], *lv denied* 24 NY3d 1219 [2015]; *People v Williams*, 107 AD3d 746, 747 [2013], *lv denied* 21 NY3d 1047 [2013]; *People v Knowles*, 79 AD3d 16, 23 [2010], *lv denied* 16 NY3d 896 [2011]). Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.