People v Jackson (2019 NY Slip Op 07442)





People v Jackson


2019 NY Slip Op 07442


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

108842

[*1]The People of the State of New York, Respondent,
v
Harold Jackson, Appellant.

Calendar Date: September 12, 2019

Before: Garry, P.J., Clark, Mulvey and Pritzker, JJ.


Paul J. Connolly, Delmar, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered August 18, 2016 in Albany County, upon a verdict convicting defendant of the crimes of rape in the first degree and criminal sexual act in the first degree.
Defendant was charged by indictment with rape in the first degree and criminal sexual act in the first degree based upon allegations that he had forcible sexual contact with the victim. After a jury convicted defendant, Supreme Court sentenced him, as a persistent violent felony offender, to consecutive prison terms of 25 years to life on each count. Defendant appeals.
The verdict was supported by legally sufficient evidence and is not against the weight of the evidence. Viewed in a light most favorable to the People, the victim's testimony, alone, was legally sufficient to prove both counts because it satisfied the burden and proof requirements for every element of the charged crimes (see People v Granger, 166 AD3d 1377, 1378-1379 [2018]). Although a different conclusion would not have been unreasonable, inasmuch as the proof relied heavily upon the victim's testimony, we defer to the jury's determinations regarding her credibility and the corroborating evidence (see People v Simmons, 135 AD3d 1193, 1196 [2016], lv denied 27 NY3d 1006 [2016]; People v Stearns, 72 AD3d 1214, 1216 [2010], lv denied 15 NY3d 778 [2010]).
Supreme Court did not err in denying defendant's pretrial motions. Our review of the grand jury transcripts reveals no basis to dismiss the indictment. As for suppression of defendant's statements to the police, "the safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation. The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d 122, 129 [2005] [internal quotation marks and citations omitted]; see People v Eriksen, 145 AD3d 1110, 1111-1112 [2016], lvs denied 28 NY3d 1183, 1186 [2017]). The only statements made by defendant that were conveyed to the jury included his address and phone number and that he did not have any girls over to his house other than female relatives. Defendant had gone to the police station on a prearranged appointment to update his address, as required by law because he was a level three registered sex offender (see Correction Law § 168-h [3]). Under the circumstances, the police asking for his address and phone number did not constitute custodial interrogation, as defendant would have expected to provide this pedigree information as part of his administrative registration requirements. Although the questioning about him having relations with females at his residence may have gone beyond the typical questions for this type of visit, considering all of the relevant factors, there is no indication that an innocent person would not have felt free to leave at the point when he made the statements at issue (see People v Eriksen, 145 AD3d at 1111-1112). As defendant's statements admitted at trial were not made during custodial interrogation, the court did not err in refusing to suppress them.
The photo array was not suggestive. "[A] photo array is unduly suggestive if it depicts a unique characteristic which draws the viewer's attention so as to indicate that the police have selected a particular individual" (People v Smith, 122 AD3d 1162, 1163 [2014] [internal quotation marks and citation omitted]). At the suppression hearing, an investigator testified that he compiled the photo array — containing photographs with similar backgrounds, depicting individuals who appear sufficiently similar to defendant — mainly from one computer database, but defendant's picture was taken from a different database and appeared somewhat elongated, possibly due to the process required to match the size of that photograph to the other photographs. The instructions given to the victim when she viewed the photo array directed her to pay no attention to any differences in the type or style of photographs. The slight elongation did not establish any undue suggestiveness, nor has defendant challenged any other aspect of the identification procedure (see People v Matthews, 101 AD3d 1363, 1364 [2012], lvs denied 20 NY3d 1101, 1104 [2013]; see also People v Quintana, 159 AD3d 1122, 1127 [2018], lv denied 31 NY3d 1086 [2018]; People v Al Haideri, 141 AD3d 742, 743 [2016], lv denied 28 NY3d 1025 [2016]). Accordingly, Supreme Court properly refused to suppress the victim's identification of defendant. Moreover, the search warrant was supported by probable cause, including the victim's identification of defendant through the photo array, requiring denial of defendant's motion to suppress physical evidence obtained during the search of his home (see People v Williams, 140 AD3d 1526, 1526-1527 [2016], lv denied 28 NY3d 1076 [2016]).
Supreme Court erred in denying defendant's challenges for cause to two prospective jurors. "CPL 270.20 (1) (b) provides that a party may challenge a potential juror for cause if the juror 'has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial'" (People v Harris, 19 NY3d 679, 685 [2012]). If a prospective juror makes statements that raise a serious doubt regarding his or her ability to be impartial, the trial court should conduct a follow-up inquiry regarding the preexisting opinion and must excuse the juror unless he or she states unequivocally on the record that he or she can be fair and impartial (see People v Warrington, 28 NY3d 1116, 1119-1120 [2016]; People v Harris, 19 NY3d 679 at 685-686; People v Arnold, 96 NY2d 358, 362-363 [2001]). "If there is any doubt about a prospective juror's impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have 'replaced one impartial juror with another'" (People v Arnold, 96 NY2d at 362, quoting People v Culhane, 33 NY2d 90, 108 n 3 [1973]).
During voir dire, when counsel asked prospective juror No. 2 if she thought that this was the right case for her to sit on, she responded, "I'm not sure. I teach youth. I have five children. That's where my sympathy would lie. . . . [T]he victim was probably about 20 years old. I would have a tendency to be biased in that direction." Counsel then asked if those thoughts might make it difficult for prospective juror No. 2 to weigh the evidence. She responded, "I don't think so. I think I could be biased. I'm sorry, unbiased. I do lean toward sympathy with the youth. That's where my life is." She then mentioned that she was very involved in church youth organizations and teaches ninth and tenth grade girls.
Prospective juror No. 3 acknowledged that he was having a hard time listening to the subject matter of the case during voir dire because he has four younger sisters and a daughter. When asked if he could "get beyond the allegations and really weigh the evidence" or whether that might be a problem, he responded, "I'd like to say I could be impartial, but until everything comes out it's difficult to say." No further questions were asked of these potential jurors by counsel or Supreme Court.
Supreme Court denied defendant's challenges to these prospective jurors for cause, asserting that each had said he or she could be fair and impartial. Although prospective juror No. 2 did say she could be unbiased, she again stated immediately thereafter that she leaned toward sympathy with youth and worked with young girls, indicating an inclination toward the young female victim. Prospective juror No. 3 made an equivocal statement regarding his partiality. As neither prospective juror unequivocally stated that he or she could be impartial, the court should have posed questions to rehabilitate them by obtaining such assurances or, if rehabilitation was not possible, excused the prospective jurors (compare People v Warrington, 28 NY3d at 1120-1121). By not doing so, the court committed reversible error, considering that defendant exercised peremptory challenges to remove those two prospective jurors and exhausted such challenges (see CPL 270.20 [2]; People v Wright, 30 NY3d 933, 934 [2017]; People v Harris, 19 NY3d at 685-686). Thus, we must reverse.
Because defendant's arguments alleging erroneous evidentiary rulings, ineffective assistance of counsel and a harsh and excessive sentence might not arise at a new trial, we will not address them at this time.
Garry, P.J., Clark and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.